UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LEONARD WASHINGTON JR.,  )  <br>         Plaintiff,   ) <br>                ) <br>   v.      )    CAUSE NO.: 2:24-CV-219-JEM <br>                ) <br> FRANK BISIGNANO, Commissioner  ) <br> of the Social Security Administration,  ) <br>         Defendant.    ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Leonard Washington Jr. on June 26, 2024, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16], filed December 5, 2024. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On March 18, 2025, the Commissioner filed a response, and Plaintiff filed his reply on April 14, 2025. For the reasons set forth below, the Court remands the Commissioner's decision.

**I.      Background**

On December 9, 2021, Plaintiff filed an application for benefits alleging that he became disabled on May 31, 2021, later amended to September 10, 2020. Plaintiff's application was denied initially and upon reconsideration. On April 10, 2023, Administrative Law Judge ("ALJ") Mary Pamela Hubert held a telephonic hearing at which Plaintiff, along with an attorney and a vocational expert ("VE"), testified. On May 30, 2023, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.     The claimant meets the insured status requirements through December 31,

1

2026.

2. The claimant has not engaged in substantial gainful activity since September 10, 2020, the alleged onset date.

3. The claimant has the following severe impairments: obstructive sleep apnea and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant must avoid concentrated exposure to hazards (unprotected heights and moving machinery).

6. The claimant is incapable of performing past relevant work.

7. The claimant was an individual of advanced age on the alleged onset date.

8. The claimant has at least a high school education.

9. Transferability of job skills is not an issue because the claimant is not disabled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 12]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ "will reverse an ALJ's decision only if it is the result of an error of law or if it is unsupported by substantial evidence." *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023). "A reversal and remand may be required, however, if the ALJ committed an error of law, or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). At a minimum, "[a]n ALJ must provide an adequate 'logical bridge' connecting the evidence and [the] conclusions, but an ALJ's opinion need not specifically address every single piece of evidence." *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

## III. Analysis

Plaintiff argues that the ALJ erred in her determination of the RFC because it failed to take into account all of Plaintiff's symptoms and the combination of his impairments as they related to his ability to work and her evaluation of symptoms was not supported by substantial evidence. The Commissioner argues that the ALJ's analysis was sufficient, and her decision was supported by substantial evidence.

Plaintiff argues that the ALJ failed to assess the functional limitations that Plaintiff's ongoing daytime fatigue, anxiety, and panic attacks would cause, especially in combination with his other impairments, and failed to adequately explain how the RFC accounted for his combination

3

of impairments. "Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, … an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling.").

    The ALJ found that Plaintiff's obesity was a severe impairment, and therefore more limiting than what the state agency physicians concluded, but did not explain how she accounted for that impairment in the RFC. The ALJ is required to specifically "consider the limiting effects of obesity when assessing a person's RFC," analyzing whether "the functional limitations caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing." SSR 19-2p, 2019 WL 2374244, *3-4 (May 20, 2019); *see also Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (finding that, even if obesity is not a severe impairment itself and "merely aggravates a disability caused by something else[,] it still must be considered for its incremental effect on the disability"); *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (remanding where the ALJ "should have considered the weight issue with the aggregate effect of [claimant's] other impairments"). In particular, "In cases involving obesity, fatigue may affect the person's physical and mental ability to sustain work activity. This may be particularly true in cases involving obesity and sleep apnea. The combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately." SSR 19-2p, 2019 WL 2374244 at *4.

    In this case, the ALJ concluded that Plaintiff's obesity was a severe impairment, and noted that his "obesity reasonably exacerbates his [obstructive sleep apnea]," AR 23, but then in the next

4

sentence discounted the severity and effect of his sleep apnea, without any additional discussion of how his obesity contributed to his sleep apnea or how the RFC accounted for the exacerbation. *See Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir.), *on reh'g*, 368 F.3d 691 (7th Cir. 2004) ("Maybe the administrative law judge thought that since he had already ruled that Barrett's obesity was a severe impairment of her ability to work, though not totally disabling in itself, [. . .] conditions caused or aggravated by obesity were irrelevant. That of course would be wrong. The problem is that we don't know what he thought."). Instead, the ALJ noted that Plaintiff "gets benefit from his CPAP use, obtaining 3-4 hours of sleep per night with the use of his CPAP" and refers to "[o]ther notes [that] indicate report by the claimant that he is sleeping well." AR 23. Not only is only getting 3 hours of sleep per night on a regular basis inadequate, the record the ALJ cites to in support of this assertion also indicates that Plaintiff "is sleepy during the day" and has a "high chance of dozing" when watching tv or siting in a meeting, and a "moderate chance of dozing" if sitting and reading or riding as a passenger in a car. AR 565. The notes she cites to in support of her proposition that claimant reports "sleeping well" likewise do not contain that information; instead, they are notes from an office visit at which Plaintiff sought treatment "for insomnia and anxiety" with "complaints of feeling very anxious, having panic attacks, low mood [and] not sleeping well despite being on Ambien" for insomnia." AR 363. The ALJ also discounted Plaintiff's symptoms because he "is without any invasive surgical procedures or necessitated inpatient hospitalizations." AR 23. However, as Plaintiff argues, he did receive significant treatment for his sleep apnea, including a number of medications, a CPAP device, and treatment with a pulmonologist. His failure to get extreme surgery – without any indication that surgery was recommended by his physicians – does not mean that his symptoms were not as bad as he claimed, nor does the improvement the ALJ

5

noted when Plaintiff stopped working mean that the improvement to his panic and sleep would continue if he resumed full-time work. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) (as amended Aug. 20, 2014) ("Simply because one is characterized as 'stable' or 'improving' does not necessarily mean that she is capable of doing light work."); *Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

In addition to failing to explain how Plaintiff's severe obesity interacted with his other impairments to affect his ability to work, Plaintiff argues that the ALJ's analysis also failed to account for Plaintiff's panic attacks and daytime fatigue, symptoms that lead to time off-task in the workplace. The ALJ noted that Plaintiff suffered from panic attacks and anxiety, but concluded that the symptoms do not cause limitations in his ability to work. This case is being remanded for a new evaluation of the evidence, and on remand the ALJ is directed to consider all of Plaintiff's limitations and how the combination of impairments affects his ability to work.

The ALJ failed to create a logical bridge from the evidence to the conclusions about what limitations Plaintiff experiences and also failed to adequately explain how the limitations she did find affected Plaintiff's ability to work. In particular, the ALJ concluded that Plaintiff had mild limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace. When asked what off-task allowance an employer would accept, the VE responded that "a tolerance . . .for off task behavior[] would be anywhere from zero to 10% which is zero to six minutes every hour," and that more than one absence, late arrival, or early departure from work per month would generally preclude paid work. AR 58. The record does not

indicate what evidence supported the ALJ's apparent determination that Plaintiff's mild limitations in concentration, persistence, and pace were equal to being off task less than 10% of the time, and the ALJ did not incorporate any specific pace limitations in Plaintiff's RFC. *See Childress v. Colvin*, 845 F.3d 789, 793 (7th Cir. 2017) ("[The] conclusion that [claimant suffering from sleep apnea] can sit for at least 6 hours a day at work and stand and/or walk another 2 hours a day, while sleeping 3 hours a day at work and missing 3 or more days of work per month, and keep to this schedule week after week, and continue employed until his sleeping on the job and absenteeism is noticed by the employer is—absurd."); *Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016) ("The judge mentioned that she was restricting the plaintiff to simple work because of his sleep apnea, but did not explain why someone with hypersomnia should be able to stay awake at work just because it's simple work.").

  The ALJ noted that "if the claimant's anxiety disorder were to have been found severe, the impartial vocational expert provided unskilled jobs, which could account for a limitation as to simple tasks." AE 27. However, just because a job does not require any particular skills does not mean that someone with severe anxiety would be able to perform it, and nothing in the record explains how someone with difficulties with daytime somnolence would be able to stay on task, no matter how simple that task. *See, e.g., Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("[W]e have likewise underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace. More to it, observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift.") (quoting *Winsted v. Berryhill*,

7

923 F.3d 472, 477 (7th Cir. 2019)); *Jelinek v. Astrue*, 662 F.3d 805, 813-14 (7th Cir. 2011) (concluding that limitations to sedentary and light unskilled work did not "address[] the impact of the mental limitations . . . which . . . limited [the plaintiff's] ability to maintain regular work attendance, to carry out instructions, and to deal with the stresses of full-time employment"); *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public").

This matter is being remanded for a new RFC that fully incorporates all of Plaintiff's limitations and adequately – and accurately – analyzes the evidence in the record. The ALJ should also incorporate all of those limitations in any hypothetical presented to the VE.

### VI. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 30th day of June, 2025.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record